The first case this morning is number 05-3252. Bechler, you will have to help me with the pronunciation against the Department of the Interior. Mr. Thompson. May it please the Court. Pronunciation is Bechler. Thank you. This appeal derives from a final decision of the Merit Systems Protection Board, wherein the MSPB summarily denied Dan C. Bechler's petition for review of an adverse decision by the AJ in his whistleblower individual right of action case. There are a number of important and material factual details which are recited in our briefing filed with the Court, but the central protected disclosure by Mr. Bechler involved Mr. Bechler's statements to a group of United States Senators who were touring the Billings, Montana, air tanker base back in September of 2000. This was a brand new facility. 2.2 million federal dollars at least, that was the appropriation dollar amount, had been spent to create and develop and erect this air tanker base. Dan Bechler, at that time, was the air tanker base manager of the facility. These touring U.S. Senators were being escorted by Thomas Boettner, one of the two decision makers, superior decision makers, whose conduct is centrally at issue in this case. Thomas Boettner and the other one being Mr. Bickel. Both of these individuals' conduct here is recited in the briefing, but the key events of this day in September of 2000 related to Mr. Bechler. The following facts are undisputed. Number one, it's undisputed in the record of this case that the six U.S. Senators visited this base. Mr. Bechler was upstairs with other BLM employees in the room when these six U.S. Senators visited the base. It's undisputed that Dan Bechler had made previous critical comments in writing to Mr. Boettner, dating back to 1998, as the base was being designed. When these U.S. Senators toured the base, and then when they went upstairs, walked upstairs, and went into the radio room, Dan Bechler, very specifically, was very critical of the base. It's undisputed, however, that Mr. Bechler made critical comments. The issue really, the disputed question, is the severity of it. In this appeal, the appellant has made the following points. First, the appellant argues that the institutionalized refusal of the Board to even address the matter of whether the A.J.'s initial decision was unsupported by substantial evidence caused the Board's perfunctory final decision to be arbitrary, capricious, and abuse of discretion, thereby requiring reversal of the decision. There were two supplemental petitions for review filed with the Board. The Board made, this is following the A.J.'s decision, the Board made no reference in its boilerplate two-page final order to these supplemental petitions which recited evidence which was not available at the time of the hearing. In addition to that, the... Is there, on that point, is there any statutory requirement for the Board, express statutory requirement for the Board to conduct review of delegated decision-making in any particulars, or is the decision, the degree of delegation open to the determination by the Board? Well, Your Honor, 5 U.S.C. Section 7703C sets forth the standard for review for Board cases by the Federal Circuit. The statute, the statutory authority for the Board... 7701. 71. Right. Under which 1201.115D was enacted. Well, yeah, what I'm really trying to get at is, is there anything in the statute itself, 7701 presumably, that says, Board, you must, in your capacity as the full Board, as opposed to the delegated tasks delegated to the administrative judges or whomever, you must decide the following types of issues in the following types of cases. Well, this Court, I think, in a somewhat different context, addressed that inferentially in Habee v. Department of Justice, where the Court began with the proposition that the MSPB has the power to determine questions of fact and law in the first instance, and that an administrative judge does not have an independent statutory basis for his, and it's phrased only in the masculine jurisdiction, he hears only those cases referred to him by the MSPB, and that such scheme, and I'm quoting again, forecloses customary standards of appellate review, and that the MSPB can substitute its judgment for that of one of its administrative judges. It can, but the question is, does it have an obligation to? In this particular instance, Your Honor, where the consequence here is that the petitioners, well, where the MSPB benefits by referring and delegating cases to administrative judges for adjudication, because it can process more cases using that procedure, the consequence for petitioners in this hierarchy is that most petitioners will only have their case heard by an A.J. unless they can meet the petition requirements of the C.F.R. And this Court has made clear that under the federal statute, the regulation sets out two conditions, and the point, I think, that Your Honor is asking me is, is the Board required to do that? On one level, we would say that this procedure, which was employed here in this instance, deprives Dan Beckler of due process rights in terms of the Board itself failed to analyze and even focus upon a record here. There was no transcript made at the time that the Board made its decision. When the Board made its decision, there were two petitions for relief, which contained additional record which weren't even referenced by the Board. This particular appellant, administratively, was entitled to have, particularly where the Board advises the petitioner, the appellant petitioner in this instance, that the Board is going to review the record and that anything that's of record need not be produced. And where there has been a failure to analyze the record, to focus on the record, to review the substance of the record by definition. And one of the things that was brought to the Board's attention was the serious technical problems which were experienced during the conduct of the hearing. And this was a fundamentally, this was a pervasive and most fundamental defect in these proceedings. There was no reference in the Board's decision to this defect. Now, we've briefed and argued as a separate issue, and citing authorities, both from administrative authorities, from Board, published Board decisions, and published decisions of the Court, of the Courts of Appeals relating to administrative decisions, where you have a failure to maintain the record, you have a failure where the judge is in Denver, Colorado, and where the proceedings are in Billings, Montana. We have recited numerous specific examples where the record broke. And, in fact, the fundamental nature of the problem goes to the fact that the A.J. credited Thomas Lonnie's testimony. Now, this is a gentleman who was speaking with Gavin Frost, counsel for the agency, in Washington, D.C., a couple of weeks before the hearing. And nobody had ever mentioned that he was supposedly present in this room. There's references to an interrogatory answer that really doesn't say that. The fact of the matter is Thomas Lonnie comes out with testimony that's very specific, which is about something which occurred three years before that, which during that time, or at the time that Lonnie was supposedly present in this radio room, supposedly the remarks of Mr. Beckler were mild criticism about the base. It was no big deal. And yet Mr. Lonnie talked specifically about where people moved in the room and basically what they were wearing. I mean, it was an incredible display. Thomas Volkner, the immediate supervisor, or one of the two decision-making people in this case with regard to the petitioner, was in the room. He was deposed. And in his testimony, he was asked, was anybody else there? He says, no. And I asked him, are you sure? And he answers, positive. So we have technical problems. The judge is sitting in Denver. The telephonic conference nature of the hearing, the arrangement, was because the judge had recently had a new child and asked counsel from both sides if they would agree to such an arrangement. Let's say that there is significant evidence of whistleblowing or retaliation. What are the remedies that you're seeking? There's the question of non-selection, but there's always the argument that the person who was selected was qualified. That would have to, I gather, was not particularly litigated, was it? Whether but for the whistleblowing, Mr. Beckler would have been selected. And there was a suspension. But is that the total of the retaliation that is being complained of? Well, the non-selection, Your Honor, and I'm cutting into my rebuttal time, and I will respond, and I'll continue. The non-selection related specifically to the fact that Mr. Beckler had applied for the position of assistant state aviation manager. Just prior to that time, there was this disciplinary complaint that was created that supposedly Mr. Beckler had fraudulently used a government credit card or something like that. One of the people traveling with Mr. Beckler at the time was Mr. Bickham. Mr. Bickham testified. He spent 18 days working up this complaint. Many months later, this complaint, the evil of this complaint was the fact that it was pending during the time that the position opens up. And, oh, after the fact, gee, there wasn't any merit to it. It was dismissed. But only a few weeks after, it was filled with someone else. Mr. Beckler had- Were there findings on this issue? I mean, it looked from the record as if an argument could be made that the person who was selected was qualified. And so would, in fact, was there a record made as to whether Mr. Beckler would have been selected but for all of these events that you've mentioned? Your Honor, Mr. Beckler was the highest rated, highest ranked, highest numerically ranked applicant. On the written application. Excuse me, Your Honor? On the written application, but I take it not on the interview. He scored lower, I gather, on the interview than Mr. Hamilton. Is that correct? I believe the testimony, ma'am, Mr. Hamilton was selected. Right, and scored, as I recall, considerably higher on the interview than Mr. Beckler. Your Honor, thank you. I'm sorry, I didn't mean to interrupt. No, that's quite all right. Essentially, Your Honor, our position is this, and I think the record reflects it. Where you have these things going on contemporaneously, you have a complaint, temporarily, that is drummed up by Mr. Bickham. It's in place. Everybody involved, the two ultimate decision makers in the A.J. did find that the two ultimate decision makers were Bickham and Bogner. They were participants in the generation of this complaint. They were aware it was pending. They were also the selecting officials. The fact that this is pending during that time, I think, is circumstantial evidence in and of itself that, and particularly where Mr. Beckler was, clearly qualified. It's not as if Mr. Beckler was not qualified. He did score highest on a couple of portions of the evaluation. So under these circumstances, Your Honor, our position is the defects in the proceedings, the defects in the A.J.'s analysis of the record, being what they were, were such that at the time that, if we get to the point of whether Mr. Hamilton was qualified, he was qualified, but the point was an argument certainly is legitimately made based on the record that Mr. Beckler was best qualified. Certainly Mr. Hamilton was a smokejumper. I think in the record there's a lot of evidence that Mr. Hamilton was a smokejumper and had very much less experience than Mr. Beckler did in his 31 years in firefighting service. Okay. Thank you, Mr. Thompson. Mr. Edmonds? Thank you, Your Honor. It may please the Court. We respectfully request that the Court affirm the judgment of the MSPB below as it is supported by substantial evidence and correctly applies to the law. The government isn't taking the position that these were not whistleblowing kinds of disclosures. Are you? The conversations with the Senators, with the letters that were written? Yes, Your Honor. In fact, we are taking that position. The disclosures, the alleged whistleblowing disclosures that were made involved minor complaints about the base, not the sort of thing that under this Court's cases would arise. And I'm thinking particularly of the White cases in, I believe, 2001 and 2005. But does your case depend, does your argument depend on whether or not they're minor? After all, they triggered a significant investigation. Is the position that if what he disclosed was minor, it wasn't whistleblowing, but if it was not minor, then it was? Well, this Court said in the White case in 2005 that disclosures had to be significant. I'm asking the government's position in this case. Well, our position in this case is that these disclosures were minor because they're not evidence of gross mismanagement. That was what I asked. You're saying it's not whistleblowing because they were minor, whereas if, in fact, they were not minor disclosures, they would be deemed whistleblowing? Well, if they had risen to the level of gross mismanagement, yes, Your Honor. Factually, if the things that had been disclosed concerned something that amounted to gross mismanagement, then they would be protected disclosures, and that is essentially the Court's case law. So he's telling senators of the United States things that caused a significant response. You're saying were minor as a matter of what, as a matter of fact? Well, I'm not sure, Your Honor, what the significant response was. In this case, there were the disclosures and then relatively little follow-up. And the only thing that I can think, Your Honor, that would be a significant response is what the petitioner alleges, the trumped-up charges against him that the agency brought. But, in fact, the administrative judge's fact findings in this case demonstrate that that was done for completely unrelated reasons and that there was, in fact, evidence to support the inquiry that was ultimately not sustained because the agency discovered that Mr. Bickham, Mr. Beckler's supervisor, had basically corrected his memory. I mean, he discovered after speaking to Mr. Beckler that the evidence that he initially was relying on and that he was concerned about wasn't, in fact, evidence. But that investigation, I believe, is the only significant response that this caused. I don't think the senators, and particularly at the instance that counsel has argued is the central whistleblowing activity in this case, I don't think that there was any response to that. It was simply a disclosure to the senators in the course of their visit to the base that resulted in, you know, essentially nothing. So that argument about the significance of these complaints, I gather, means that it really doesn't matter about the deficiencies in the hearing. You're saying more or less as a matter of what, law, that these didn't rise to the level of whistleblowing types? Because there was a significant deficiency in the hearing where the phone apparently went out and no one knew that it was out and apparently the hearing officer didn't hear a lot of things that went into the decision and the board didn't review it. Yes, Your Honor. I will. Let me turn to that. I will say, first of all, that the fact that these were not whistleblowing disclosures is an independent basis that this court could rely on. Let me turn, though, to the procedural arguments and explain why they, too, do not support a reversal by this court. The first, the video conferencing is obviously the biggest procedural argument that has been made. And the fact of the matter, Your Honor, is that that argument was waived. At the closing arguments in this case, after the alleged video conferencing malfunctions had occurred, the administrative judge specifically asked counsel for Mr. Beckler whether his position was that these so-called deficiencies had prevented the hearing from being fair. And, in fact, the response to that that counsel gave was that no, he did not contend that, and he even complimented the video conferencing equipment on the record in the case. So, first of all, there's a waiver issue because that issue wasn't presented to the administrative judge. In fact, it was waived as much as anything can be. This was before there was a transcript and before he saw what the decision was going to be. I mean, before the decision came out. I'm not sure if it was before. This happened sometime after. Closing arguments took place after the hearing, and I'm not sure when the transcript was generated. But even if you look at the transcript, Your Honor, if you turn to that and, you know, we would invite the court to read the transcript, the problem with the video conferencing equipment is grossly overstated. A lot of the things, there's a footnote in the petitioner's brief that discusses, you know, these 29 instances where the video went out. And if you look in the record and if you read through the record, a lot of those instances are simply cases where the administrative judge said, you know, speak closer to the microphone or speak up, I can't hear you. And, you know, at that point, if there wasn't or speak closer so that the recording, you know, the audio taped recording of the proceedings would pick up the voice. So sometimes the judge even heard it. Do you have a citation to the record or is it in the record or the appendix that we have to the exchange in which the judge and counsel for the petitioner discussed the video at the end? The only thing I could find on that was at page 215 of the appendix, there is a statement by the judge that give me feedback if there's any problem with the video, something to that effect. Is there what you seem to be describing as something else which I didn't see in the record? Can you cite me to something in the record? Unfortunately, Your Honor, this hasn't been transcribed yet. We would be happy to transcribe it and submit it if the court will allow us to leave. But that did, in fact, happen. It is on the audio recording of the proceedings. It is not, however, in the appendix here. You've listened to it? I have not. Agency counsel has. And I have also read in agency counsel's briefs before the MSPB his informal transcription of it. Do you think we should request the transcription? Except that this is something that the government could do, is transcribe the… I believe it is, Your Honor. I would get back to the court if I couldn't, but I believe that we can request a transcript from the board's proceedings because there is an audio tape. And I'd be happy to inquire. And if I can't, I'll let the court know. All right. It can only help. Okay. Yes. Under the rules, apparently it's not transcribed unless the petitioner asks for it, right? I believe that's the case, yes, Your Honor. But in any case, if the court were to just read the record, you would see that there is nothing that arises to the level of this hearing where everything was constantly going down and the technical failures just interrupted with the proceedings. On the contrary, with one exception, and the exception is that during agency counsel's questioning of one witness, the audio feed from Montana went down and the court could not hear the end of the question. And this occurs, Your Honor, on page A199 of the appendix. With that one exception, there was no time at which the judge did not hear, other than asking parties to speak up or asking witnesses to speak up, the proceedings. That was the only time in which the videoconferencing failed. What happened in that instance, as you can see on page 199, is that the judge asked counsel to repeat the question. He repeated the question and the hearing continued. We submit that that doesn't rise to prejudicial error that would require reversal of the board. There were a couple of points at which the video seemed to have gotten, at minimum, had hiccups. Your Honor, there were two points. It froze on a couple of points, I think. It froze on the judge, Your Honor, yes. The judge's picture was frozen on the screen at two points, and there at pages 123 and 201 of the appendix. But there was no indication that that happened with respect to any of the witnesses, I take it? That did not happen with respect to the witnesses, and there was no objection to not being able to see the judge. The parties continued. No objection was raised. There was even some discussion of that, if I recall correctly. Yes. Comments that, well, we don't really need to see the judge. Right. Exactly. Exactly, Your Honor. And, in fact, whenever there was any, you know, difference, something that you would encounter that's different than at a live hearing, it's noted on the record and you can see exactly what the effect was, and it just, you know, we're baffled at how it could have an effect, could not have prejudiced the petitioner. The other procedural argument that the petitioner makes is that the board has to conduct substantial evidence review in any case where the administrative judge's decision is challenged on the basis of substantial evidence. Well, that's simply not the case. A ruling like that would turn back years of accepted board practice and would also be contrary to the holdings of this court that have approved the board's use of its rule, which appears at 5 CFR 1201.115. One recent case, for example, is the Brenneman case, which was decided in February by this court, where the court specifically, although it didn't really speak to the issue directly, it specifically approved a decision as not an abuse of discretion where the agency, or where, I'm sorry, where the board would not review a petition because the petitioner did not show that there was new evidence. So this court effectively affirmed the board's decision. Let me raise one additional. Is there, on that point, and I don't have the statute with me, but my recollection is 7701B addresses the scope of the delegation authority by the board. Is there any substantive restriction, statutory restriction, setting aside due process considerations that Mr. Thompson raised, or self-imposed regulatory restraints imposed by the board? Is there any statutory restriction on the board's authority to delegate? I don't know of one that would apply to this case, Your Honor, that would say that the delegation in this case is not allowed. And I'm not sure I know of, I don't think that there is. Could the board simply, in effect, put itself out of business by saying, we are going to delegate all decision-making authority to the administrative judges and we will simply be administrators and not adjudicators? I don't believe so. You don't believe there's a limit on their ability to do that? I mean, I don't, I'm asking, I'm not, I'm just trying to get a feel for whether the statute puts any limits at all. You say not as pertains to this case. Right, well, I am not aware of any limits, but I haven't specifically looked into that issue for this case. In this case, we have a specific instance where the argument is that the board needs to conduct substantial evidence review, and it's well known that the board does not do that. So I wouldn't know the answer to the broader question, Your Honor. I would like to turn just briefly to one more substantive issue, which also supports an affirmance in this case. And that issue is that the ALJ, the board, or the AJA, the board correctly found that the agency would have made the same decisions and would have taken the same action in this case even, you know, if there had not been alleged whistleblowing disclosures. What is, on that point, what, does the record show with respect to the respective scores of Mr. Beckler and I guess, is it Hamilton? Is that the other candidate? Hamilton, yes. The record shows that in the personnel office's review of the written applications, Mr. Beckler was, in fact, rated higher. I'm not sure. I think the exact scores were 124 on a scale, I'm not sure, and 97. So he was significantly higher. However, when the independent panel conducted interviews, it found, based on the interviews and also based on its review of the written applications, I think it was 60% based on the interviews and 40% based on the written applications, that Mr. Hamilton was very much more qualified than Mr. Beckler. And it specifically cited his management abilities, his experience in the past with sort of this, I can't get too technical, but this oversight at a level that Mr. Beckler didn't have, this policy or, I guess, fire control policy-making level that Mr. Beckler didn't have. And so that factored into their decision. But basically, there was an independent panel that heard this that was not influenced by the people who were aware of the alleged disclosures. The panel members were not aware of the alleged disclosures. They interviewed the applicants, and they determined that Mr. Hamilton was more qualified. I see I've exhausted my time. I do have just a factual question, if I could, just very briefly. I was a little confused by the briefs and perhaps by the way the administrative judge addressed the question as to whether the parties regarded there being two disclosures. In this case, there are three. Specifically, the first disclosure, I take it everybody agrees, is the 1990 disclosure to Senator McCain's office. The second is the meeting in late 2000 at the base with the senators up in the upstairs room, I take it, and whether or not Mr. Lonnie was there and so forth. That's number two. There is a third, maybe a third disclosure involving Senator Burns, Senator Baucus, and Congressman Rayburg that occurred in 2001. Is that a separate disclosure? Are the parties treating that as an adjunct to the disclosure to the senators at the meeting? It's a separate disclosure. Okay. Well, it's been treated by the petitioner. Okay. Thank you. Thank you. Thank you. Thank you, Mr. Edmonds. Mr. Thompson. Not much. Just make it two minutes. Two minutes. To pick up on a point that was addressed in an exchange between the court and the opposing counsel a minute ago, this advisory panel or this group, this reviewing group of a handful of people were not the appointing officials. The appointing officials, the people that appointed Hamilton and did not appoint Beckler, were the two central individuals in this case, Bickham and Boatner. That is clear in the record. We, I believe, state that in our statement of facts. And it is very clear both in the testimony at the hearing and also in the depositions that, and I think specifically during both Boatner's testimony and Bickham's testimony, they both acknowledged that they were appointing officials, that this advisory body was just that. But the point that the administrative judge made, as I understood it, was that the advisory body was independent. They were not told how to come out, and they were not aware of any of the disclosures. Nonetheless, they recommended Hamilton unanimously. No member of that advisory panel, Your Honor, had ever been testified in this case. And in this instance, it was a case of the appointing officials who could have done anything they wanted with the recommendation, failed to appoint Beckler. And they were intimately aware of the baseless disciplinary complaint that was prepared by Bickham that was pending only during basically the time that the position of assistant state aviation manager opens up until it closes. Second, with regard to the closing argument issue, I raised the issue, and I got a very negative and hostile response from the A.J. immediately. The closing argument was done telephonically some weeks after the hearing was concluded, and it may be available on audio. The court reporter, and there was no court reporter transcript. All court reporter transcript was ordered and presented to the court and made our record. How a judge, the A.J., responded to me when I raised that issue would be on that video. To respond to a point made by, Your Honor, I see my red lights on. Respond to the last point, please. There was a question asked of me by the court, by Judge Bryson, and it probably was best answered by referring to footnote 9 of our brief, which said Petitioner Dan C. Beckler also filed two supplemental petitions. Excuse me. I'm sorry. I'm looking at the wrong place. It's footnote 11. I apologize. While 7701K benignly states, quote, the board may prescribe regulations to carry out the purpose of this section, unquote, the statutory scheme of this section in no way evidences any authorization granted to the board by Congress for the board to abdicate or delegate its responsibility to an administrative judge for review an A.J.'s factual findings or at least determine whether those findings are supported by substantial evidence. And I should have answered that question as I addressed it in that footnote. Thank you. Thank you, Mr. Thompson. Mr. Edmonds, the case is taken under submission. Thank you, Your Honor.